WOLF, APPELLEE, *v.* HYMAN, APPELLANT.

(No. 8250—Decided April 22, 1957.)

*Mr. Samuel L. Chalfie* and *Mr. Jerome S. Teller,* for appellee.

*Mr. Peter J. McCarthy, Jr.,* for appellant.

MATTHEWS, J.   The plaintiff, at all times material to the decision of this case, was a licensed real estate salesman under the law of Ohio, and the defendant was a licensed real estate broker.   This is an action to recover a portion of a real estate broker's commission paid to defendant for effecting a sale of certain real estate.

The Common Pleas Court rendered judgment for the plaintiff, and this is an appeal from that judgment.

The plaintiff, as a licensed real estate salesman, had been associated with the defendant licensed real estate broker for many years prior to July 20, 1954, and on that date he entered

into a contract for the defendant—his broker—with one Konstam who owned an apartment building, whereby the defendant was given the exclusive right to sell the apartment building at a specified price, for a period of four months.

It happened that the defendant had another salesman associated with him by the name of Marks who, during the four-month period, was able to interest his brother-in-law in the property and induce him to make an offer and deposit with the defendant a cashier's check for $4,000 to be returned to him in the event the offer was not accepted. The offer was not accepted, but the check was left with the defendant who was to continue looking for a suitable investment in other real estate or this same property, should the owner conclude to sell on satisfactory terms.

This was the situation when the four months expired and the exclusive agency ended. It is agreed that the contractual relation between the defendant and Konstam ended, and, thereupon, the property's status was an "open listing," that is, any licensed real estate broker could seek a buyer and, if a sale was effected, would be entitled to a commission.

On December 10, 1954, the plaintiff left the employment of the defendant, not, however, for any reason relating to this transaction, and, thereupon, associated himself with another licensed real estate broker by the name of Mayerson.

After the defendant's exclusive agency had expired, and the plaintiff had left defendant's employment and associated himself with Mayerson, another licensed real estate broker, Konstam, the owner of this apartment building, entered into a contract with Ben Siegel Realty Company, whereby he gave it an exclusive authority to sell the apartment building, for a period of 90 days. However, no sale was effected during the 90-day period and the property reverted to an "open listing."

Perhaps, during this entire period, Marks, the licensed real estate salesman associated with the defendant, cherished the hope that he would be able to compose the differences between Konstam and his brother-in-law and effect a sale to the latter, and, thereby, earn a commission. In any event, after the Siegel exclusive agency expired, he was able to get Konstam

and his brother-in-law to agree on terms which, however, were different from the terms in the prior offer, and a sale was effected. There is evidence that the plaintiff went with Marks to interview Konstam and in that way assisted Marks in effecting the sale, but there is no evidence that the defendant knew of this or authorized Marks to employ the plaintiff, and, indeed, as will be pointed out later, the plaintiff was in no position to accept any such employment, had it been offered. Konstam paid the defendant $7,200, in accordance with schedule of fees promulgated by the Cincinnati Real Estate Board.

The defendant paid Marks $3,600 for effecting the sale. This action is not based on any claim that the plaintiff effected the sale. It is the plaintiff's claim that although he was no longer associated with the defendant at the time of sale he, nevertheless, is entitled, upon a sale, to 15 percent of the selling commission for having effected the original listing.

That there was a contract entered into when the plaintiff became associated with defendant is admitted by both, and they agree on some of its terms. They agree that the salesman had no property right in any listing—exclusive or open—which he might obtain. They agree that all listings obtained by a salesman were the property of the broker. And they agree that the salesman was entitled to a commission for obtaining the listing, no matter what salesman made the sale, during the employment of the salesman who obtained the listing for the broker. They disagree as to whether he is entitled to a commission, after he has left the employment, upon a sale effected after the severance of the relation between such salesman and the broker.

The evidence is conflicting as to whether there was an actual agreement on this subject. In the absence of any statutory regulation, we would be inclined to hold that the preponderance of the evidence proves that it was agreed that the salesman procuring the listing would be entitled to a commission only if a sale was made during his employment, but there are statutes which regulate the conduct of persons engaged in the business of buying and selling real estate for others and restrict their freedom to act and contract. We refer to Chapter 4735, Revised Code, titled "Real Estate Brokers."

By Section 4735.01, paragraph (A), Revised Code, a real estate broker is defined as any person "who for another and for a fee * * * sells, exchanges, purchases," etc. In paragraph (C) of the same section, a real estate salesman means "any person associated with a licensed real estate broker to do or to deal in any acts or transactions set out or comprehended by the definition of a real estate broker * * * for compensation or otherwise."

It will be observed that a real estate salesman is given no right to conclude a sale. He is an associate of a licensed real estate broker who, by definition, is the one who sells. It will also be observed that a licensed real estate salesman has no independent status. He is an associate of a licensed real estate broker, and can only function through the broker with whom he is associated. This is made manifest by other provisions in the statute. By Section 4735.12, Revised Code, a broker is required to post a bond in the penal sum of $5,000 as a condition of receiving a license to act as a real estate broker. No such bond is required of an applicant for a salesman's license. By Section 4735.13, Revised Code, the license of both the real estate broker and the salesman associated with him are required to be "prominently displayed in the office or place of business of the real estate broker, and no license shall authorize the licensee to do business except from the location stipulated therein." And, by subsequent provisions in the same section, the broker is required to return the salesman's license to the State Board of Real Estate Examiners for cancellation when the salesman ceases to be associated with him, and, upon any change in location of business, notice to the board is required, whereupon the board shall issue a new license for the unexpired time.

It is clear that these statutes contemplate that a licensed real estate salesman must conduct his business at one location only, and in association with one licensed real estate broker who is required by the law to have a distinctly designated place of business, the location of which is required to be on file with the State Board of Real Estate Examiners.

At the time the negotiations for this sale were being conducted by the defendant, the plaintiff was a licensed real estate salesman, associated with Mayerson who was a licensed real estate broker. The plaintiff lacked capacity under these statutes to legally participate in these negotiations on behalf of the defendant. And, even in the absence of a statute, he owed a duty of loyalty to the broker with whom he was then associated.

It should also be mentioned that there is no substantial evidence that the defendant knew of the plaintiff's participation in these negotiations. It is true that, perhaps, Marks, his licensed salesman, knew, but there is no evidence that he communicated that information to the defendant, and, certainly, Marks, a salesman, had no authority to employ the plaintiff to act for and on behalf of the defendant.

So we conclude both that the statute precludes a recovery and, also, that the plaintiff has failed to show any right of recovery in the absence of a statute.

For these reasons, the judgment is reversed, and final judgment entered in this court for the defendant.

*Judgment reversed.*

HILDEBRANT, P. J., and LONG, J., concur.